IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

HUGO S. ROBLES and SHELLY ROBLES,       )
                                        )
            Plaintiffs,                 )    TC-MD 110684N
                                        )
    v.                                  )
                                        )
DEPARTMENT OF REVENUE,                  )
State of Oregon,                        )
                                        )
            Defendant.                  )    **DECISION**

Plaintiffs appealed Defendant's Notice of Deficiency Assessment for the 2007 tax year.

A trial was held in this matter on November 21, 2011, in the Tax Court Mediation Center, Salem,

Oregon. Nicole McOmber (McOmber), Certified Public Accountant, appeared on behalf of

Plaintiffs. Hugo Robles (Hugo) and Shelly Robles (Shelly) testified on behalf of Plaintiffs.[1]

Anne Thompson (Thompson), Tax Auditor, appeared and testified on behalf of Defendant.

Bruce McDonald also appeared on behalf of Defendant. Plaintiffs' Exhibits 1 through 15 were

offered and received without objection. Defendant's Exhibits A through O were offered and

received without objection. Defendant submitted a Post Trial Brief on December 19, 2011, and

Plaintiffs submitted a Post Trial Brief on December 20, 2011.

## I. STATEMENT OF FACTS

Hugo testified that he is a union welder; there are not many other specialists in his area.

He testified that, in 2007, he was in his five year apprenticeship. Hugo testified that he would be

dispatched to a particular region, but he had the option to work in any state. He testified that his

union "home local" in 2007 was Los Angeles, California. Hugo testified that he had five

---

[1] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's Decision recites facts and references to two individuals with the same last name, Robles. To avoid confusion, the court will use the first name of the individual being referenced.

employers in 2007: Harder Mechanical, Inc., California; J.H. Kelly, LLC, Washington; NAES Power Contractors (NAES), Boardman, Oregon; Welded Construction, L.P., Wisconsin; and Associated Pipe Line Contractors, Inc., Colorado, Wyoming, and Nebraska. (Ptfs' Ex 3 (Hugo's W-2s).) Hugo testified that jobs would typically last anywhere from one or two weeks to six months. He testified that his longest job in 2007 was the pipeline project for Associated Pipe Line Contractors out of Sydney, Nebraska. Hugo testified that he would typically drive to a job site and stay nights in a local trailer park for the duration of the job.

Thompson questioned whether Hugo had a right to reimbursement from his employers, stating that Plaintiffs provided no proof that Hugo was not reimbursed. Hugo testified that he is like an independent contractor and is not typically reimbursed for the costs associated with going to a job. Plaintiffs provided letters from three of Hugo's employers regarding reimbursement. (Ptfs' Ex 11.) A letter from J.H. Kelly states that, in 2007, Hugo "did not receive subsistence or per diem from J.H. Kelly, L.L.C." (*Id.* at 1.) A letter from Harder Mechanical Contractors states "We do not reimburse union employees for any work related expenses. All employees are responsible for their own work clothes, boots and non-major tools. We do not reimburse for mileage, if we are required to pay travel and/or subsistence per union contracts these amounts are included in gross wages." (*Id.* at 2.) The third letter, from NAES, states that Hugo was "employed" at the "Boardman, Oregon plant site during 2007 from April 25 through May 25. The total amount that [Hugo was] paid during that time for lodging and meals was $1,197.00." (*Id.* at 3.) McComber stated that NAES did not report that reimbursement correctly on Hugo's W-2 and Plaintiffs paid taxes on any reimbursement received: "it was discovered that employer [NAES] did not properly report an allowance that was provided to [Hugo] in the amount of $1,197. The amount should have been included in taxable wages, however * * * it was

determined they did not include the allowance in taxable wages. In addition, the allowance was not reported on Form W-2 box 12l." (Ptfs' Post Trial Br at 3.)

Plaintiffs claimed unreimbursed employee business expenses totaling $39,230 for the 2007 tax year. (Ptfs' Ex 1 at 3.) Plaintiffs' claimed 2007 expenses included: $1,665 for vehicle expenses; $624 for other transportation fees; $4,819 for union and professional dues; $2,040 for uniforms and protective clothing; $15,582 for tools; and $14,500 for per diem expenses. (*Id.* at 6, 8.) Defendant disallowed all claimed expenses except $3,759 for union dues. (Ptfs' Compl at 6.) Defendant did not previously audit Plaintiffs' gross income or Schedule F farm expenses, but determined that Plaintiffs had unreported income of $95,745 based on Plaintiffs' bank account and that $7,644.60 of Plaintiffs' $9,650 of farm expenses should be disallowed.

## II. ANALYSIS

This court has previously held that the legislature "intended to make Oregon personal income tax law identical to the [IRC] for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law. ORS 316.007." *Ellison v. Dept. of Rev.,* TC-MD No 041142D, WL 2414746 at *6 (Sept 23, 2005); ORS 316.048.[2] The issues presented relate to unreimbursed employee business expenses, schedule F farm expenses, and gross income. "On th[ose] question[s], Oregon law makes no adjustments to the [IRC] and therefore, federal law governs the analysis." *Porter III v. Dept. of Rev.*, TC No 4789, WL 3365847 at *1 (Oct 20, 2009); ORS 316.007, ORS 316.012. "[T]he view of the Commissioner of Internal Revenue as to the legal analysis is always dispositive." *Id.*

/ / /

---

[2] All references to the Oregon Revised Statues (ORS) and Oregon Administrative Rules (OAR) are to 2005. All references to the Internal Revenue Code (IRC) and accompanying regulations are to the 1986 code and include updates applicable to 2007.

Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Taxpayers are required to maintain records sufficient to establish the amount of any deduction claimed. IRC § 6001; Treas Reg § 1.6001–1(a). With respect to the claimed unreimbursed employee business expenses, Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). This court has statutory authority to determine the correct amount of the deficiency, "even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue[.]" ORS 305.575. Defendant has the burden of proof with respect to its request that a deficiency for unreported income of $95,745 be assessed.

A.      *Unreimbursed Employee Business Expenses*

Section 262 of the IRC states that "no deduction shall be allowed for personal, living or family expenses." IRC § 262(a). However, IRC section 162(a) allows a deduction for travel expenses incurred in connection with a trade or business, stating in pertinent part:

> "There shall be allowed as a deduction all the *ordinary* and *necessary* expenses paid or incurred during the taxable year in carrying on any trade or business, including—
>
> "* * * *
>
> "(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business[.]"

(Emphasis added.)

/ / /

"Federal cases have long drawn a 'bright line' between deductible and nondeductible travel expenses as affected by the right to reimbursement." *Symond v. Dept. of Rev.*, 11 OTR 417, 418 (1990). "Numerous courts have held that an expense is not 'necessary' under § 162(a) when an employee fails to claim reimbursement for the expenses, incurred in the course of his employment, when entitled to do so." *Orvis v. Comm'r*, 788 F2d 1406, 1408 (9th Cir. 1986) (citations omitted). Thus, the employee has the burden to request reimbursement from the employer and may claim a deduction only if reimbursement is incompletely unavailable.

1.     *Reimbursement*

The parties dispute whether Hugo was reimbursed by his employers. Thompson stated that Plaintiffs provided no proof that Hugo was not reimbursed. Plaintiffs provided three letters from Hugo's employers, two of which state that he was not reimbursed for work related expenses. The third letter from NAES states that Hugo was reimbursed $1,197 for lodging and meals from April to May 2007, but the evidence presented suggests that the reimbursement was improperly reported as taxable wages.[3] Additionally, Hugo testified that he does not receive reimbursement from employers for travel, lodging, meals, tools, or clothing. Defendant offered no evidence that Hugo was reimbursed or had a right to reimbursement from his employers. The court finds that the letters provided by three of Hugo's employers establish that he was not reimbursed for business expenses relating to his employment for J.H. Kelly, Harder Mechanical, or NAES. Plaintiffs did not provide any evidence concerning the reimbursement policies of Associated Pipeline or Welded Contractors, LLP; thus, the court finds that all claimed expenses associated with those employers are not allowed.

---

[3] "In general, taxpayers whose employers or customers furnish them with dual purpose items (e.g., work clothing or travel expenses) can exclude these items from gross income if the expenses could have been deducted under § 162 or § 212 had they been incurred and paid by the taxpayer." Boris I. Bittner and Lawrence Lokken, 1 *Federal Taxation of Income, Estates and Gifts* ¶ 20,2,14 (3rd ed) 1999. The reimbursement from NAES for meals and lodging should have been excluded from Hugo's gross income.

2.      *Substantiation under IRC section 274(d)*

IRC section 274(d) includes strict substantiation requirements for travel expenses:

"No deduction or credit shall be allowed—

"(1) under section 162 * * * for any traveling expense (including meals and lodging while away from home),

"* * * *

"unless the taxpayer substantiates by *adequate records or by sufficient evidence* corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel * * * (C) the business purpose of the expense  * * *."

(Emphasis added).  Accompanying regulations clarify the "adequate records" requirement:

"[A] taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record, * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use * * *.  It is not necessary to record information in an account book, diary, log, statement of expense, trip sheet, or similar record which duplicates information reflected on a receipt so long as the account book, etc. and receipt complement each other in an orderly manner."

Treas Reg § 1.274–5T(c)(2)(i).  "Although a contemporaneous log is not required, corroborative evidence to support a taxpayer's reconstruction 'of the elements * * * of the expenditure or use must have a high degree of probative value to elevate such statement' to the level of credibility of a contemporaneous record."  *Christine v. Comm'r*, TCM 2010-144, WL 2640125 at *3 (2010), citing Treas Reg §1.274-5T(c)(1).[4]  "[T]he degree of substantiation necessary to establish business purpose will vary depending upon the facts and circumstances of each case. Where the

/ / /

---

[4] Treas Reg § 1.274–5T(c)(1) states:  "A contemporaneous log is not required, but a record of the elements of an expenditure or of a business use of listed property made at or near the time of the expenditure or use, supported by sufficient documentary evidence, has a high degree of credibility not present with respect to a statement prepared subsequent thereto when generally there is a lack of accurate recall. Thus, the corroborative evidence required to support a statement not made at or near the time of the expenditure or use must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure or use supported by sufficient documentary evidence."

business purpose is evident from the surrounding facts and circumstances, a written explanation of such business purpose will not be required." Treas Reg §1.274-5T (c)(2)(ii)(B).

On their 2007 Form 2106, Plaintiffs reported 25,200 business miles and elected to take a deduction of $1,665 based on actual vehicle expenses for a vehicle rental and depreciation. (Def's Ex A at 10.) Plaintiffs presented no evidence on vehicle depreciation, focusing entirely on mileage. Following trial, Plaintiffs revised their claimed mileage to 18,025.4 miles and calculated a mileage deduction based on the standard mileage rate of $.485. (Ptfs' Post-Trial Br at 2.) Plaintiffs claimed $624 for other transportation fees and $14,500 for lodging and meals, which is based on the "federal average per diem rate of $96 per night for 151 nights as supported on [Plaintiffs'] calendar * * *." (Ptfs' Post-Trial Br at 3.) McOmber stated that actual costs were higher: $6,909.01 for lodging, $1,634.92 for meals, and $6,507.30 for food. (Ptf's Ex 9 at 1, 55, 109.) McDonald disagreed with Plaintiffs' method, stating that actual figures must be used.

Plaintiffs provided a 2007 calendar stating Hugo's claimed mileage for 2007, noting the location of travel and miles driven. (Ptfs' Ex 8.) Hugo testified that the original calendar was lost or destroyed and the calendar provided was reconstructed by "rendering [the information] from receipts and payroll records" as well as Hugo's recollection. (Ptfs' Post-Trial Br at 1-2.) Hugo testified that he has always used credit cards for travel and business expenses.

Thompson testified that she believes Hugo's calendar to have been created in 2010 and she disallowed the claimed vehicle expenses because the calendar was not a log record made close enough in time to the travel. Thompson stated that the calendar does not meet "the strict substantiation requirements of IRC 274(d) and Treas. Reg. 1.274-5T as well as Treas. Reg. 1.274-4." (Def's Post-Trial Brief at 3.) She testified that she also disallowed the claimed

$625 in "transportation charges" for airline travel and car rental because the airline travel dates do not reconcile with the calendar and because there was no business purpose for the car rental.

The court agrees with Defendant that Plaintiffs' calendar was not created sufficiently close to Hugo's travel in 2007 to meet the substantiation requirements of IRC section 274(d) without additional support. However, Plaintiffs provided substantiation including receipts for Hugo's lodging and meals (establishing the dates and amounts of expenditures) and Hugo's credible testimony (establishing the business purpose of expenditures and travel). (*See* Ptfs' Ex 9.) The court allows mileage, lodging, and meals to the extent substantiated by receipts and credible testimony and to the extent that the receipts complement the calendar "in an orderly manner." The court will discuss allowable travel expenses with respect to each of Hugo's five employers as well as his claims for travel expenses related to trainings and job prerequisites.

i. *Employment with J.H. Kelly*

Hugo testified that he had a job with J.H. Kelly in Ferndale, Washington, from January 21 through February 2.[5] (Ptfs' Ex 8 at 2, 3.) He testified that he drove to and from the job site, which was his typical practice. Plaintiffs claimed 851.4 miles for Hugo's travel to and from Ferndale and 9.0 miles of travel to and from the job site daily (11 days). (*Id*.) Plaintiffs provided a receipt for $65.15 for The Cedars RV Resort in Ferndale, Washington, dated January 21; a receipt for $325 from Beachside RV Park in Blaine, Washington, dated January 23, for January 23 through February 23. (Ptfs' Ex 9 at 3, 4, 5.) The court finds that 950.4 miles and lodging expenses of $390.15 are allowed.

/ / /

/ / /

---

[5] Unless otherwise noted, all dates referenced are in 2007.

ii.     *Employment with Harder Mechanical, Inc.*

Plaintiffs reported 832.5 miles for Hugo's travel to Los Angeles, California, on February 7 for his job for "Harder Mech." (Ptfs' Ex 8 at 3.) They claimed 2.0 miles per day from February 9 through March 24, excluding Sundays, for a total of 82 miles over 41 days. (*Id.* at 3, 4.) Plaintiffs provided receipts from the County of Los Angeles Department of Beaches and Harbors recreational vehicle (RV) parks for: $55 on February 8 (2 days); $456 on February 10 (19 days); $216 on February 23 (9 days), $168 on March 10 (seven days); and $216 on March 17 (nine days). ((Ptfs' Ex 9 at 7-11, 13-16.) Plaintiffs also provided a receipt for $57.19 from Motel 6 Chula Vista on March 19. (*Id.* at 17, 18.) The receipt from Motel 6 Chula Vista overlaps in time with Hugo's receipts from the Los Angeles County RV parks and does not appear to have a business purpose. The court finds that 945.5 miles and lodging expenses of $1,111 are allowed.

iii.     *NAES Power Contractors – Boardman*

Plaintiffs claimed 315.8 miles for Hugo's travel to Boardman, Oregon, on April 23. (Ptfs' Ex 8 at 5.) They claimed 27.2 miles round trip each day from April 24 through May 24, for a total of 870.4 miles.[6] (*Id.* at 5, 6.) Plaintiffs provided receipts from the Driftwood RV Park in Boardman, Oregon, for $58.70 on April 24 and $415.00 on April 30. (Ptfs' Ex 9 at 28-30.) Plaintiffs provided receipts for $31.32 and $30.24 from Cascade Locks, Oregon, on May 26, and May 27, respectively. (*Id.* at 31, 32.) The court finds that 1,186.2 miles and lodging expenses of $473.70 are allowed. The receipts from Cascade Locks are for a site for three adults and appear to have been incurred after Hugo's job in Boardman. The court finds that the travel expenses claimed on May 26 and 27 are not allowed because there is no evidence of a business purpose.

---

[6] Plaintiffs stated the total as 924.8 miles, but that figure appears to be based on double-counting April 29 and 30, 2007. (Ptfs' Ex 8-5, 8-6.)

iv.    *Safety trainings, job prerequisites, interviews, and other receipts*

Hugo testified that the types of jobs that he held in 2007 typically required substantial security background checks, safety trainings, and other related tests as a prerequisite to hiring. He testified that he does not always get a job even after completing safety trainings and other prerequisites. He testified that, on January 9, he traveled to the Bay Area for safety training but did not ultimately get the job. (Ptfs' Ex 8 at 2.) Plaintiffs claimed 954.4 miles, round trip, and provided a receipt for lodging at the Motel 6 in Walnut Creek, California for $64.93 on January 9. (Ptfs' Exs 8 at 2, 9 at 1-2.) Hugo testified that he incurred expenses of $207.94 for a rental car and $46 on parking for a trip to California on August 20. (Ptfs' Ex 4 at 2, 3.) He testified that the purpose of that trip was to attend a job interview in Los Angeles.

Plaintiffs provided receipts for $321 for Mingo RV Park Inc in Tulsa, Oklahoma on October 30 through November 13. (Ptfs' Ex 9 at 46-49.) The calendar states that, on October 31, Hugo "went to union hall practice welding" and reports 15 miles driven each day from October 31 through November 2; the calendar is blank from November 3 through 8. (Ptfs' Ex 8 at 11-12.)

Hugo provided a receipt for $337.60 for airline travel from Eugene, Oregon, to Los Angeles, California on March 26, with a return trip on March 29. (Ptfs' Ex 4 at 5-7.) He testified that the purpose of the March 26 trip was for safety trainings. Hugo also testified that, from March 26 to March 31, he was working in the "Bay Area" as a supervisor for the Chevron Refinery. (Ptfs' Ex 8 at 4.) He testified that he was working in Valencia and Playa Del Ray. (*Id.*) Plaintiffs' calendar states that Hugo "Drove to Valencia Travel Village" on March 25,

/ / /

/ / /

claiming 42.5 miles, and that he drove 86.2 miles round trip each day, except Sunday, from March 26 through April 9 for a total of 948.2 miles. (*Id.* at 4-5.) Plaintiffs provided receipts from the Valencia Travel Village in Castaic, California, for $280.00 on March 25 and for $18.68 on April 1. (Ptfs' Ex 9 at 19, 20.) Plaintiffs provided a receipt from Castaic Lake RV Park in Castaic, California, for $216.00 on April 1 (seven days); a receipt from Giant Redwoods RV & Camp in Myers Flat, California, for $56.00 (two days); and a receipt from Bay Pines Travel Trailer Park for $33.80 on April 7. (*Id.* at 21-25.) Plaintiffs claimed 833.0 miles for Hugo's travel back to Oregon on April 7. (Ptfs' Ex 8 at 5.)

Plaintiffs provided no substantiation to corroborate Hugo's claimed travel for trainings and interviews; thus, it is unclear whether those trips had any business purpose. Furthermore, some of the evidence presented is conflicting. Plaintiffs' calendar states that Hugo drove to Valencia on March 25, but the airline ticket provided states that he flew from Oregon to Los Angeles on March 26. Hugo's August 20 interview was during the time period that he was working on the pipeline job in Nebraska. Plaintiffs offered no explanation for the conflicting evidence. The court finds that Plaintiffs have not substantiated their claimed expenses for travel on January 9, March 25 through April 9, August 20, or October 31 through November 8.

v. *Meals*

Plaintiffs provided extensive receipts for meals and groceries, all of which the court has reviewed. (Ptfs' Ex 9 at 55-108.) Some receipts provided lack itemization or include purchases for items other than meals or groceries. (*Id.* at 55, 64, 67, 70, 71, 73, 74, 77, 81, 102, and 106.) Some receipts state that the meal was for several guests with no clear indication of the amount attributable to Hugo's meal. (*Id.* at 59, 62, 103, and 104.) Some receipts do not state a location and do not clearly relate to any of Hugo's business trips. (*Id.* at 58, 68, and 81.) Other receipts

state a location that conflicts with Hugo's calendar, lodging receipts, or testimony. (*Id.* at 57, 61, 87, 89, 97, 98, and 100.) Some receipts are from time periods when the court has not found that Hugo was on business travel and, thus, lack any apparent business purpose. (*Id.* at 78, 79, 81-89, 92-94, 96-98, 107, and 108.) Some receipts are illegible. (*Id.* at 63, 90, 91, 95, 101, and 105.) Some receipts state the payor as "Shelly Robles." (*Id.* at 66, 69, 72, 75, 76, 80, 82, 83, 84, and 87.[7])

After carefully reviewing all of Plaintiffs' receipts for meals and groceries, the court allows $17.96 for groceries purchased in Ferndale, Washington, on February 3 and $8.27 for groceries purchased in Santa Rosa, California, on April 8. (Ptfs' Ex 9 at 56 and 65.) The court also allows $17.77 for meal in Chula Vista, California, on March 23. Allowable meals and grocery purchases total $44.00. As set forth above, the court finds that, for the 2007 tax year, Plaintiffs are allowed 3,082.1 miles, $1,974.85 for lodging, and $44.00 for meals and groceries.

B.      *Union and Professional Dues*

Plaintiffs claimed $4,819 in union and professional dues on their 2007 return. (Ptf's Ex 1 at 8.) At trial, Plaintiffs were unable to produce all of the receipts and paystubs necessary to support the expenses related to union and professional dues reported on their return. (Ptf's Post-Trial Br at 2.) Plaintiffs provided receipts to substantiate $3,759 of the $4,819 that was reported in the return and the parties are in agreement that $3,759 should be allowed.

C.      *Work clothing*

Plaintiffs claim $2,040 in expenses for work clothing and $767.28 for dry-cleaning. (Ptf's Post-Trial Br at 3.) The specific clothing items claimed include jeans, work boots, heavy

---

[7] Those receipts also lack any clear identification of the location.

trousers, shirts, and other miscellaneous items.[8] (Ptf's Ex 6 at 1-12.) Hugo testified that it is important to "starch" shirts and pants to protect them from heat, flames, and sparks that are part of the welding process. He testified that he could be sent home by a supervisor for appearing in clothing that shows signs of wear because such clothing is a safety hazard. Hugo testified that, due to heavy wear, clothing and footwear do not last as long as their normal life span. He testified that he does not wear work clothing outside of work.

Thompson concluded that the clothing claimed by Plaintiffs was not sufficiently specialized for Hugo's work to qualify as a necessary business expense under IRC section 162(a) and case law. (Def's Post-Trial Br at 3-4.) In support of her determination, she argued that: the clothing is adaptable for ordinary wear; the clothing was not specifically required by Hugo's employers; and the clothing was purchased from general retail stores. (*Id.*)

"In order to deduct the cost of clothing and the cleaning thereof, as ordinary and necessary business expenses, the clothing must be required as a condition of the taxpayer's employment and must not be suitable for general or personal wear outside the work place. * * * This is true even if the clothing would not have been purchased except for the taxpayer's employment." *Egner v. Comm'r*, 48 TCM (CCH) 1041 (1984) (citing *Donnelly v. Commissioner,* 262 F2d 411 (2d Cir 1959) affg. 28 TC 1278 (1957); *Yeomans v. Commissioner*, 30 TC 757 (1958)). Whether clothing can be worn for "general wear" is an objective test that considers whether an item is normally worn by individuals as street clothing. *Drill v. Comm'r* (*Drill*), 8 TC 902 (1947). The court in *Drill* disallowed a deduction for clothing that was not specifically required by the employer and was adaptable to general wear, even though clothing was soiled with plaster, cement, and mud at work. *Id.* Clothing maintenance expenses are

---

[8] McOmber clarified that the amount claimed does not include the "custom" welding caps described by Hugo at trial and no evidence of the cost for welding caps was offered.

allowable as ordinary and necessary business deductions if the clothing itself was similarly deductible. *Mortrud v. Comm'r*, 44 TC 208, 217 (1965).

Hugo's clothing is essential to his employment, but all of the items purchased are also suitable for general or personal wear, including jeans, trousers, work boots, and heavy duty shirts. Hugo's claimed clothing items are commonly sold and worn by others as street clothes and are thus a personal expense under IRC section 262(a), even if Hugo does not wear them as such. Because the court finds that none of the clothing expenses claimed by Plaintiffs' are deductible business expenses, the court finds that the clothing maintenance costs (dry cleaning and starching) are, similarly, not deductible.

D. *Tools and related expenses.*

Plaintiffs claim $15,582.52 for tools and related expenses. (*See* Ptf's Ex 7.) Hugo testified that he was building a welding truck and a "welding machine," both of which are required by his industry. He testified that a truck bed would typically cost $15,000 to $20,000, but he manufactured his own. Hugo testified that he also needed tools including wrenches, tape measures, and other hand tools. He testified that he is not reimbursed for those expenses by his employers or by the union. Hugo testified that the truck bed was not something required for any of his jobs in 2007; rather, he was preparing it for future possible jobs.

Thompson does not dispute the amount of the claimed expenses, but rather argues that the expenses should not be allowed because Hugo "testified that the mobile welding business was not a requirement of any of the five employers [he] worked for, but rather a new business venture [he] was exploring." (Def's Post-Trial Brief at 4.) Plaintiffs responded that the "tool

/ / /

/ / /

expenses were incurred for mobile welding equipment that was utilized under new union contracts which availed the taxpayer to negotiate a higher union rate." (Ptfs' Post-Trial Br at 3.)

"To be 'necessary' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, 2002 WL 236685 at *2 (US Tax Ct) (citations omitted). Hugo's expenses for "tools" including the welding truck and "welding machine" were not used for any of Hugo jobs in 2007; rather, Hugo incurred those expenses so that he could pursue more lucrative jobs in the future. Thus, the court finds that Plaintiffs' claimed expenses for "tools" were neither ordinary nor necessary for Hugo's business activities in 2007 and are, therefore, not allowed.[9]

E.     *Other income*

Defendant requested that an additional deficiency of $95,745 for unreported income be assessed based on unidentified deposits and transfers into Plaintiffs' bank account. Thompson stated that she used the bank reconstruction method to determine the amount of unreported income. (Def's Post Trial Br at 6.) Thompson explained her calculation of $95,745:

> "[T]otal deposits into the provided bank account were $174,005. The auditor was able to determine that nontaxable child support income was received in the amount of $4,503 and was therefore excluded from the income calculation. Compared with the income reported on the tax return filed, there was an income discrepancy in the amount of $95,745."

(Def's Post-Trial Brief at 5 (citing Def's Ex D at 3).)

Plaintiffs testified that the transfers and deposits into their bank account were all related to Plaintiffs' management of the personal and financial affairs of their parents. Shelly testified

---

[9] Under limited circumstances, IRC section 195 provides a deduction for "start-up expenditures." However, Plaintiffs did not elect to take this deduction and presented no evidence that Hugo's expenditures for the welding truck and mobile welding machine qualify under IRC section 195.

that the transaction identified as "transfers" were from their parents' bank account and were not income to Plaintiffs. (*See, e.g.,* Ptf's Exs 13 at 73; 15 at 3 ("8/2 Online Transfer" reportedly "from mother to cover cost move home & set mobile").) Shelly testified that her mother now lives with Plaintiffs at their home and that her parents would provide Plaintiffs with money to pay bills and other expenses. Plaintiffs stated that "transfers" totaling $63,027 were:

> "reimbursements and expenses for moving [Shelly's] mother due to memory loss and medical reasons. Mothers home was sold and then a mobile home placed on taxpayers residence so [Shelly] could [] provide support and care for her mother."

(Ptfs' Post-Trial Brief at 4.) Plaintiffs state that "deposits" totaling $24,727 were "related to reimbursement amounts from [Shelly's] fathers account, which is held at another bank. [Shelly's] father was placed in [a] veterans retirement home." (*Id.*) Defendant responded that Shelly "was a signor on an account of her parent's and transferred money from their accounts into [Plaintiffs'] account to pay personal expenses for her and her parents. Those accounts were not provided to the auditor, nor does the auditor have any other documentation to show that those amounts should be excluded from income." (Def's Post-Trial Brief at 5-6.)

"Gross income" is defined as "all income from whatever source derived * * *." IRC § 61(a). All income is included in an individual's gross income unless specifically excluded. IRC § 61(b). Defendant may prove the existence of unreported income "by any practical method available in the circumstances of the particular situation." *Flowers v. Dept. of Rev.*, 16 OTR-MD 151, 153 (1999) (citing *U.S. v. Doyle*, 234 F2d 788, 793 (7th Cir 1956)). "The reconstruction need only be reasonable in light of all surrounding facts and circumstances." *Petzoldt v. CIR*, 92 TC (CCH) 661, 687 (1989). "Bank deposits constitute prima facie

/ / /

/ / /

evidence of income." *Ekwenugo v. CIR*, 102 TCM (CCH) 321, WL 4484788 at *3 (2011) (citations omitted). "[T]he taxpayer must prove that the reconstruction is in error and may do so, in whole or in part, by proving that a deposit is not taxable." *Id.*

> "A taxpayer's unsubstantiated and self-serving testimony that deposits are nontaxable transfers between family members and friends ordinarily is insufficient to overcome the reconstruction of income. If a taxpayer contends that some deposits are nontaxable transfers from family members or friends, the taxpayer should normally introduce credible evidence, such as documents or the testimony of the family members or friends who participated in the alleged transfers, to prove that specific deposits are nontaxable. If a taxpayer fails to produce relevant documentation or to call relevant witnesses and fails to explain the absence of such evidence, we may infer that the evidence would have been unfavorable."

*Id.* at *4 (citations omitted).

Here, Defendant determined unreported income of $95,745 in 2007 based on unidentified deposits and transfers into Plaintiffs' bank account. That evidence is sufficient for Defendant to meet its burden of proof and the burden shifts to Plaintiffs. In response, Plaintiffs testified that the deposits and transfers into their bank account were not taxable income, but rather were reimbursements and payments related to caring for their parents. That may be true, but Plaintiffs failed to provide any evidence to corroborate their testimony that the transfers and deposits into their account were non-taxable transactions. Accordingly, the court finds that Plaintiffs had unreported income of $95,745 in 2007, as determined by Defendant.

F.     *Farm expenses*

Hugo testified that Plaintiffs' farm is 111 acres, of which 96 to 98 acres are timber and the remainder is pasture. He testified that, in 2007, Plaintiffs had cows, goats, horses, and chickens. Hugo testified that he baled his own hay and used it for the cows. He testified that the goats ate the grass. Hugo testified that, in 2007, one of Plaintiffs' children was a teenager who

/ / /

lived at home and helped out with the farm. Hugo testified that the purpose of Plaintiffs' 2007 farming activities was to get the farm set up as a retirement job for him.[10]

Plaintiffs' claimed the following farm expenses on their 2007 Schedule F: $427 for depreciation and section 179 expense deductions; $808 for feed; and $9,650 for "maintain fences/misc[.]" (Def's Ex A at 3.) Thompson allowed a depreciation expense of $81; a feed expense of $274.91; and an expense of $3,944 for miscellaneous repairs and maintenance. (Def's Post Trial Br at 7-8.) Plaintiffs revised their claimed farm expenses to $790.14 for feed and $9,249.32 for miscellaneous repairs and maintenance. (Ptfs' Post-Trial Br at 5-7.)

1.    *Feed expenses*

Defendant disallowed $533.09 "of farm feed expenses" finding that the receipts "did not itemize expenses" and "do not substantiate farm use." (Def's Post-Trial Brief at 7; Def's Ex N at 1.) Thompson testified that some receipts provided did not identify the store or the items purchased. (Def's Ex L at 8-29.) She testified that other expenses were disallowed because they were not for farm feed. (*See, e.g., id.* at 12 ($44.99 for men's shoes).) Hugo testified that he agrees items such as cat and canine vaccines, Christmas trees, snowmen, and shoes are not deductible. Several of the receipts do not identify the items purchased, but identify the store as "Farmhand Feed"; those receipts total $179.04. (*Id.* at 19-22, 24-26, and 28.) Hugo testified that the receipts from Farmhand Feed are not itemized because it is a "little ma and pa" shop in Cottage Grove with a basic cash register. He testified that the receipts from Farmhand Feed

///

///

---

[10] Hugo testified that Plaintiffs consumed some of their farm products and Thompson asked if Plaintiffs' farming was an "expensive hobby." It does not appear that Defendant seriously challenges Plaintiffs' profit motive for their farming activities. Defendant did not raise the issue prior to trial and presented no evidence on the issue.

differ because some receipts are for cash and others are for credit card. (*See* Ptfs' Post-Trial Br at 5.) The court finds that Plaintiffs substantiated the claimed feed expenses from the Farmhand Feed store and finds that Plaintiffs are allowed feed expenses of $274.91, in addition to that allowed by Defendant.

2.      *Miscellaneous repairs and maintenance*

Defendant disallowed as "personal expenses" the following: $86.53 from True Value for "BLK Kettle," "RND Porc Topper," and "QT CHAR Lighter Fluid"; $10.00 for "feline vaccine" and $5.95 for five "bungee cord[s]"; $12.80 for "paint"; $188.30 for "men's clothes"; $75.99 for "lawn seed," "fertilizer," and "travelling train sprinkler"; $329.99 for "Holc Tub Door Chrm"; "573.32" for "Iron Mtn Stand"; $449.36 for "personal clothing"; $1,046.20 at the Home Depot for Christmas decorations and unidentified purchases; and receipts for $11.99 and for $72.22 that did not include purchase details. (Def's Exs L at 32, 34, 35, 37, 50, 54, 55, 64, 74, 75; N at 1.) Hugo testified that the expenses for lawn seed, fertilizer, and the sprinkler are for the grass field for the cows. He could not identify the "Holc Tub Door Chrm." Hugo testified that the "Iron Mtn Stand" was for a stone walkway between Plaintiffs' home and shop, which is where farm equipment and sprayers are stored. The court is not persuaded that the expenditure for "Iron Mtn Stand" is a farm expense. The court finds that the personal expenses and the unidentified expenditures cannot be allowed as farm expenses. The court is persuaded that the $75.99 for "lawn seed, travelling train sprinkler" should be allowed as a farm expense.

Defendant also disallowed purchases made outside the state of Oregon, including $514.27 for "tools" purchased from Home Depot in California, Oklahoma, and Wisconsin. (Def's Ex L at 51, 52, 65, 66, 67, 68; N at 2); Hugo testified that he would often purchase items for the farm while he was on the road. Upon review of Plaintiffs' receipts from outside the state

of Oregon, the court cannot discern what items were purchased or whether they were farm expenses. The claimed expenditures are not allowed for lack of substantiation.

Defendant disallowed $950 claimed for a "New Holland Mower" and $1,000 claimed for a "New Holland Md 55 Hay Rake" because the receipts were "handwritten" with "no check copy." (Def's Exs L at 36, 39; N at 1, 2.) Hugo testified that those were both purchases from another local farmer. Defendant disallowed $169.99 for a "Sunguard Haycover" because "[r]eceipt is a credit. No money was paid." (Def's Exs L at 49; N at 2.) Hugo testified that the store credit used to purchase the haycover was personal and unrelated to farm purchases. The court found Hugo's testimony persuasive and allows $2,195.98 as farm expenses, in addition to the miscellaneous farm expenses allowed by Defendant.

3.  *Depreciation*

Defendant "moved" several expenses to the depreciation schedule, including: $589.99 for "sprayers"; $600 for "rock"; $525 for labor and repairs on Plaintiffs' tractor; $318.27 for a "scrapper" and "plate.' (Def's Exs L at 37, 47, 48, 63; N at 2.) Defendant stated that:

> "An asset depreciation list was requested and granted in the Motion for Discovery. The depreciation schedule was not provided to the auditor, or to trial as an exhibit. Included in the receipts provided to the auditor, capital assets were expensed, but should have been depreciated. Items that were transferred from the miscellaneous expense category and moved to the depreciation expense category are being allowed. The depreciation of assets placed in service in 2007, and adequately substantiated has been allowed as an expense."

(Def's Post-Trial Brief at 7; Def's Ex A at 3.) Defendant determined "an allowable depreciation expense of $81" and requests that the court "uphold the disallowance of $346 in depreciation expenses." (*Id.*) Hugo testified that $525 for labor on the tractor should not be depreciated. He testified that the rock was for maintenance and should not be depreciated. Plaintiffs stated that

/ / /

expenses of $908.26 for the sprayer, scrapper, and plate "were capitalized however these amounts were expensed under Section 179 as allowable." (Ptfs' Post-Trial Br at 7.)

IRC section 179 states: "A taxpayer to elect to treat the cost of any section 179 property as an expense which is not chargeable to capital account. Any cost so treated shall be allowed as a deduction for the taxable year in which the section 179 property is placed in service." The court accepts Plaintiffs' section 179 election for the sprayer, scrapper, and plate because that property is tangible property acquired for use in a trade or business; the aggregate cost does not exceed the limit for 2007; and the deduction does not exceed Plaintiffs' aggregate taxable income. IRC § 179. Plaintiffs' claimed depreciation of $467 is not allowed because Plaintiffs' failed to provide any supporting evidence. Including $4,219 allowed by Defendant, the court allows Plaintiffs farm expenses of $8,627.19, including feed and repairs and maintenance.

G.      *Penalty waiver*

Defendant imposed a 20 percent penalty for substantial understatement of income and a 25 percent amnesty penalty. (Ptfs' Compl at 4.) Plaintiffs "request a one time waiver of penalties related to tax adjustment * * *." (Ptfs' Post-Trial Br at 8.) Defendant has discretionary authority to waive the penalties imposed on Plaintiffs. *See* ORS 314.402(6); OAR 150-314.402(6). Plaintiffs' request that the court waive the penalties imposed is denied.

### III.  CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that, for the 2007 tax year, Plaintiffs' are allowed travel expenses including mileage of 3,082.1 miles, $1,974.85 for lodging, and $44.00 for meals. Based on the agreement of the parties, Plaintiffs are allowed an expense of $3,759 for union and professional dues. Plaintiffs' claimed expenses for clothing and dry cleaning are not allowed. The court further finds that, for the 2007 tax year,

Plaintiffs had unreported income of $95,745, as determined by Defendant. Plaintiffs are allowed farm expenses of $8,627.19. Plaintiffs' request that the court waive penalties for substantial understatement of income and amnesty is denied. Now, therefore,

IT IS THE DECISION OF THIS COURT that Defendant shall recalculate Plaintiffs' 2007 tax liability to conform with the court's determinations.

Dated this ___ day of July 2012.

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on July 6, 2012. The Court filed and entered this document on July 6, 2012.*